United States Bankruptcy Court
Southern District of Texas

**ENTERED**
March 23, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| KIN DEE, LLC | § | |
| | § | |
| | § | BANKRUPTCY CASE NO. 25-32199 (EVR) |
| | § | |
| DEBTORS | § | |

**ORDER
CONFIRMING DEBTOR(S)' PLAN OF REORGANIZATION
PURSUANT TO 11 U.S.C. § 1191(b)**

The Court held a hearing (the "*Confirmation Hearing*") to consider confirmation of the Second Amended Chapter 11 subchapter V plan of reorganization, ECF No. 126 (the "*Plan*") filed by Kin Dee, LLC (the "*Debtor*(s)"). Having considered the Plan, testimony, declarations, ballot summary, liquidation analysis and other evidence admitted at the Confirmation Hearing, the arguments of counsel and the applicable legal authorities, the Court hereby confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "*Confirmation Order*").[1]

## I.   JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and confirmation of a

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan.  All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless otherwise indicated.

[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor(s) main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This order supplements those findings and conclusions.  If there is an inconsistency, this Order controls.

On April 23, 2025 (the "*Petition Date*"), the Debtor(s) commenced this bankruptcy case (the "*Case*") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued as a Debtor in possession pursuant to 11 U.S.C. §§ 1108 and 1184

On April 24, 2025, the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee, ECF No. 14, appointing Chris Quinn as the subchapter V trustee (the "*Subchapter V Trustee*") pursuant to 11 U.S.C. § 1183(a).

As of the petition date, the Debtor was and continues to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtor is the proper proponent of the Plan under 11 U.S.C. § 1189.

---

[3] 11 U.S.C. § 157(b)(2).
[4] Stern v. Marshall, 564 U.S. 462 (2011).

The Debtor complied with 11 U.S.C. §1189(b).  The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Case, was conducted in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

All parties required to be given notice of the bankruptcy, all deadlines in the Case, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; projections with respect to the Debtor's ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income from future earnings to the supervision and control of the trustee as is necessary for the execution of the plan.

The Debtor, as proponent of the Plan, has meet its burden of proving the applicable elements of 11 U.S.C. §§1191(b) by a preponderance of the evidence.

The Court specifically finds that there is cause under 11 U.S.C. § 1194(b) for the Debtor to serve as the Disbursing Agent under the Plan.

Accordingly, it is therefore

**ORDERED:** that

1.      The Second Amended Chapter 11 Plan of Reorganization filed by the Debtor on February 6, 2026 (ECF No. 126) and attached hereto as **Exhibit A**, is hereby CONFIRMED and

approved in each and every respect as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below (the "*Plan*"). Debtor must contribute 60 Months of Projected Disposable Income over the life of the Plan (the "*Plan Period*"). The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date. The terms of the Plan and the Debtor'(s) or Reorganized Debtor'(s) entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor(s) and reorganized Debtor(s) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3.      Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) calendar days after entry of this order, the Debtor must serve notice of entry of this Confirmation Order ("*Notice*"), pursuant to Bankruptcy Rule 3020(c). The Notice must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

6.  The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on the Debtor(s); all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7.  The following Nonmaterial Plan Modifications are hereby approved:

**Newtek Bank, National Association Claim**:  In the event that there is monetary relief recovered by the Debtor from its claims in Cause No. 2025-67603; *Kin Dee, LLC and Warattayar Srasrisuwan v. Krua, LLC et al.;* in the 234th District Court, Harris County, Texas  that exceeds the reimbursement of attorney's fees in that lawsuit, and subject to approval of a fee application by Debtor's Counsel, the Debtor shall file a notice to all creditors on the docket of this case informing of the amount recovered by the Debtor, and shall make that amount payable first to the unpaid secured creditor, Newtek Bank National Association, and to the extent there is anything remaining, it shall be disbursed to the unsecured creditor pool.

8.  The Debtor must make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("*Disbursing Agent*") on or before the 1st day of each month (the "*Deadline*"). After receipt of the plan payments, the Disbursing Agent must distribute plan payments in accordance with the terms of this Order and the Plan before the 5th of each month until all required payments have been made. If the Debtor fails to make all required plan payments to the Disbursing

Agent by the deadline, the Disbursing Agent must provide notice to Debtor and Debtor's counsel and request payment within seven (7) calendar days of the notice. If Debtor fails to make the required plan payment to the Disbursing Agent within seven (7) calendar days of the notice, the Disbursing Agent must file a notice of default with the Clerk of Court.

9. The Subchapter V Trustee, or other designated disbursing agent, must file, a preliminary report at the conclusion of the six (6) months  from entry  of the confirmation order and then for the duration of the period in which the Debtor must tender projected disposable income or equivalent values of property under the confirmed plan as required under § 1191(c)(2) (the "*Non-Consensual Commitment Period*"), a status report on each anniversary date of the entry of the confirmation order which outlines the status of payments made by the Debtor and distributed by the Subchapter V Trustee or other designated disbursing agent, in the past year and any other post-confirmation action taken toward consummation of the plan and serve that report upon the master mailing list (matrix) as constituted by the Court on the date of service.

10. Within fourteen (14) calendar days of entry of this Confirmation Order, the Debtor must provide the Disbursing Agent with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Disbursing Agent to send plan payments. If there are any disputed claims, the Debtor must provide a separate list of such disputed claims and an estimated date of resolution. The Debtor must file a certificate of service with the Clerk of Court indicating that the claim information required by this paragraph has been timely served on the Disbursing Agent.

11. Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may file with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon

the holder of the Claim or Equity Interest to which such objection pertains ("*Disputed or Undetermined Claim*"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date. At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Clai

12. Except as otherwise provided in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent must hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent must distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent must make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

13. Disbursements may be delivered by the Disbursing Agent to (i) the address list provided by the Debtor under paragraph 9; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Disbursing Agent. If any distribution to a claimant of

an allowed unsecured claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at which time all currently due distributions must be made to such claimant as soon as practicable. Undeliverable distributions must remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable and must not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Disbursing Agent must deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

14. The Subchapter V Trustee must file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program.

15. At the conclusion of the Plan Period and upon completion of Plan payments during such time, the Subchapter V Trustee or other disbursing agent as set forth in the confirmed plan or confirmation order must file, with the Clerk of Court, a notice of completion of plan payments which documents that all payments of projected disposable income or equivalent values of property by the Debtor under the confirmed plan as required under § 1191(c)(2) have been completed and that all other prerequisites for the entry of an order of discharge pursuant to 11 U.S.C. § 1192 have been fulfilled ("*Notice of Plan Completion*").

16. Within thirty (30) calendar days of the filing of the Notice of Plan Completion, the Debtor must file a motion for entry of discharge and a motion for final decree.

17. Debtor must request a hearing date on all final motions including a motion for final decree.

18.     The Subchapter V Trustee must be compensated for their post-confirmation duties at their approved hourly rate and paid from the quarterly Disposable Income. The amount of Disposable Income distributed or reserved to creditors will be net of the Disposable Income remitted by the Debtor to the [Subchapter V Trustee/or other defined term]. The [Subchapter V Trustee's/or other defined term] fees and expenses shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the [Subchapter V Trustee's/or other defined term] fees and expenses disclosed therein. If no objection is received, the [Subchapter V Trustee/or other defined term] may disburse [his/her] fees and expenses from the Disposable Income without further order of the Court.

19.     The Subchapter V Trustee must file a post-confirmation final fee application within fourteen (14) calendar days of the motion for final decree under Fed. R. Bankr. P. 3022, which shall include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order.

20.     Upon completion of the Plan, the Subchapter V Trustee must file with the Clerk of Court a Report of No Distribution (NDR) or Final Report (TFR).

21.     After the filing of the Subchapter V Trustee's final report and resolution of any objection thereto, the Subchapter V Trustee will be discharged, the Subchapter V Trustee's bond will be cancelled, and the case will be closed.

22.     All of the Debtor'(s) assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor(s) pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal,

beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order. If this case is later converted to a case under chapter 7 of the Bankruptcy Code, all assets of the debtor shall revest in the chapter 7 estate and be subject to administration by a chapter 7 trustee.

23. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

24. The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

25. Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the

Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

26.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

27.     As soon as practicable after completion by the Debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or (2) of the kind specified in 11 U.S.C. § 523(a).

28.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

29.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

30.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors.

If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

31.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

32.     This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

**Signed: Monday, March 23, 2026**

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KIN DEE, LLC** | § | |
| | § | |
| | § | **BANKRUPTCY CASE NO. 25-32199 (EVR)** |
| | § | |
| **DEBTOR** | § | |

**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE**

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

### ARTICLE I
### INTRODUCTION

#### Identity of the Debtor

Kin Dee, LLC ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division on April 23, 2025. The Debtor manages and operates a Thai restaurant. This Second Amended Plan ("Plan") proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

#### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

EXHIBIT A

## Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

## Voting Procedures

**Unimpaired Class**.  Claimants in Class 1, 2, 3 and 6 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Class**.  Class 4 and 5 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor are seeking the acceptance of the Plan by Claimants in Class 4 and 5.  Each holder of an Allowed Claim in Class 4 and 5 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com.  To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor in order to make payments to its creditors as set forth in this Plan.  Debtor seeks to confirm a consensual plan of reorganization but is prepared to confirm this plan pursuant to § 1191(b) if necessary.

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on

2

account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor' creditors. Accordingly, the proposed Plan must provide the Debtor' creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor' creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.      **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.      **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

3

4.      **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.      **"Case"** shall mean this Chapter 11 case.

7.      **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.      **"Claimant"** shall mean the holder of a Claim.

9.      **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.     **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.     **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Kin Dee, LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18.     **"Effective Date"** The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

19.     **"Entity"** shall include Person, estate trust, and governmental unit.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtor.

21.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, April 23, 2025.

23.     **"Plan"** shall mean this Second Amended Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

24.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

25.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26.     **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtor' assets and liabilities upon confirmation as provided herein.

27. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29. **"Substantial Consummation"** shall occur upon Reorganized Debtor' commencement of payments to creditors as provided in this Plan.

30. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

### ARTICLE III
### REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Kin Dee, LLC started operations in May 2019. Debtor operates a Thai restaurant. Debtor elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

### Future Income and Expenses Under the Plan

The Debtor filed this case on April 23, 2025. Debtor proposes to pay allowed unsecured based on the liquidation analysis and cash available. Debtor anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "B" are projections of gross income, expenses, and operating income for the next five years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Warattayar Srasrisuwan. Ownership interests will remain unchanged following confirmation.

7

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

Debtor operates a Thai restaurant in Houston, Texas. Debtor's assets include cash on hand, inventory and equipment. There are partially secured creditors based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully-secured are therefore under-secured and will be treated with all unsecured creditors.

After the filing of this Chapter 11, the Debtor and Debtor Representative in her individual capacity filed a lawsuit in Harris County District Court styled as *Kin Dee, LLC and Warattayar Srasrisuwan v. Krua LLC et al*, Cause No. 2025-67603, In the 234th District Court of Houston, Harris County Texas. This action seeks to enjoin Ms. Srasriswan's former partner from competing against her and the Debtor. At this time, it is not anticipated that there will be a financial recovery from the Defendants, rather it is anticipated that any relief would most likely come in the form of permanent injunctive relief and enforcement of a non-compete. That said, in the event that there is monetary relief recovered by the Debtor from that lawsuit, the Debtor shall file a notice to all creditors on the docket of this case informing of the amount recovered by the Debtor, and shall make that amount payable first to any unpaid priority creditor claims, then to the unpaid secured creditor, Newtek Bank National Association, and to the extent there is anything remaining, it shall be disbursed to the unsecured creditor pool.

A liquidation analysis of the Debtor assets is attached hereto as Exhibit "A".

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into six classes of Claimants. These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee** These claims will be paid in full by the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor' case will not be closed until all allowed Administrative Claims are paid in full.

8

**Class 2 Claimants** **Secured Priority Tax Claims (This Claim is unimpaired)** Allowed Secured Priority Claims are for ad valorem taxes. These claims are secured with certain amounts based on estimated taxes. The following class contains Debtor ad valorem tax claims for pre-petition estimated amounts and the proposed treatment under the Plan:

**2-1 City of Houston ("City of Houston")** pertains to the allowed secured claim of **City of Houston** in the amount of **$1,090.33 (Claim No. 2-1; 25-32199; Kin Dee).** The City of Houston claim is for 2024 business personal property taxes and estimated taxes due for 2025 for business personal property and will be treated per the terms below:

The 2024 taxes and prior year taxes in the amount of $645.22 will be paid in monthly installments at 12% per annum beginning with the first month from the Petition Date until paid in full. The first monthly payment will be due and payable 30 days after the Effective Date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. Any remaining 2024 taxes must be paid in full by or before April 23, 2030. The minimum monthly payment shall be $14.35.

The 2025 real property taxes estimated in the amount of $467.55 shall be paid as the final billed tax amounts and Class 2 Claimants shall not be capped by the amounts estimated in the Plan. In the event the Debtor fails to pay 2025 taxes prior to delinquency under the Texas Tax Code, statutory postpetition interest shall accrue on such taxes in accordance with the Texas Tax Code until paid in full.

In the event the Reorganized Debtor sell, convey or transfer any of the property which is the collateral of the City of Houston claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to City of Houston to be applied to the City of Houston tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to City of Houston prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to City of Houston at any time. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the City of Houston's claim; otherwise, the City of Houston claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. City of Houston shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2026 and subsequent tax years) owing to City of Houston in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of City of Houston to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payments as required in this Plan, City of Houston shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor' attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, City of Houston may, without further order of this Court or notice

9

to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default.  In the event of a second (2nd) default, City of Houston may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-2 Houston ISD ("HISD"** pertains to the allowed secured claim of **Houston ISD** in the amount of **$1,823.46 (Claim No. 1-1; 25-32199; Kin Dee).** The HISD claim is for 2024 real property taxes and estimated taxes due for 2025 for real property of the business and will be treated per the terms below:

The 2024 taxes and prior year taxes in the amount of $1,079.06 will be paid in monthly installments at 12% per annum beginning with the first month from the Petition Date until paid in full. The first monthly payment will be due and payable 30 days after the Effective Date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. Any remaining 2024 taxes must be paid in full by or before April 23, 2030. The minimum monthly payment shall be $24.00

The 2025 real property taxes estimated in the amount of $781.93 shall be paid as the final billed tax amounts and Class 2 Claimants shall not be capped by the amounts estimated in the Plan. In the event the Debtor fails to pay 2025 taxes prior to delinquency under the Texas Tax Code, statutory postpetition interest shall accrue on such taxes in accordance with the Texas Tax Code until paid in full.

In the event the Reorganized Debtor sell, convey or transfer any of the property which is the collateral of the HISD claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to HISD to be applied to the HISD tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to HISD prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to HISD at any time.  The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the HISD's claim; otherwise, the HISD claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim.  HISD shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full.  Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to HISD in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of HISD to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payments as required in this Plan, HISD shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor' attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default.  In the event that the default is not cured within five (5) days, HISD may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default.  In the event of a second (2nd) default, HISD may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-3 Houston Community College System ("HCC"** pertains to the allowed secured claim of **HCC** in the amount of **$202.00 (Claim No. 3-1; 25-32199; Kin Dee).** The HCC claim is for 2024 real property taxes and estimated taxes due for 2025 for real property of the business and will be treated per the terms below:

The 2024 taxes and prior year taxes in the amount of $172.30 will be paid in monthly installments at 12% per annum beginning with the first month from the Petition Date until paid in full. The first monthly payment will be due and payable 30 days after the Effective Date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. Any remaining 2024 taxes must be paid in full by or before April 23, 2030. The minimum monthly payment shall be $2.66.

The 2025 real property taxes estimated in the amount of 86.62 shall be paid as the final billed tax amounts and Class 2 Claimants shall not be capped by the amounts estimated in the Plan. In the event the Debtor fails to pay 2025 taxes prior to delinquency under the Texas Tax Code, statutory postpetition interest shall accrue on such taxes in accordance with the Texas Tax Code until paid in full.

In the event the Reorganized Debtor sell, convey or transfer any of the property which is the collateral of the HCC claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to HCC to be applied to the HCC tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to HCC prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to HCC at any time.  The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the HCC's claim; otherwise, the HCC claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim.  HCC shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full.  Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to HCC in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of HCC to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payments as required in this Plan, HCC shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor' attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, HCC may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, HCC may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-4 Harris County ("HC"** pertains to the allowed secured claim of **HC** in the amount of **$1,314.96 (Claim No. 4-1; 24-33980; Kin Dee).** The HC claim is for 2024 real property taxes and estimated taxes due for 2025 for real property of the business and will be treated per the terms below:

The 2024 taxes and prior year taxes in the amount of $711.50 will be paid in monthly installments at 12% per annum beginning with the first month from the Petition Date until paid in full. The first monthly payment will be due and payable 30 days after the Effective Date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. Any remaining 2024 taxes must be paid in full by or before April 23, 2030. The minimum monthly payment shall be $15.83.

The 2025 real property taxes estimated in the amount of $602.96 shall be paid as the final billed tax amounts and Class 2 Claimants shall not be capped by the amounts estimated in the Plan. In the event the Debtor fails to pay 2025 taxes prior to delinquency under the Texas Tax Code, statutory postpetition interest shall accrue on such taxes in accordance with the Texas Tax Code until paid in full.

In the event the Reorganized Debtor sell, convey or transfer any of the property which is the collateral of the HC claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to HC to be applied to the HC tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to HC prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to HC at any time. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the HC's claim; otherwise, the HC claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. HC shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to HC in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of HC to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payments as required in this Plan, HC shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor' attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default.  In the event that the default is not cured within five (5) days, HC may, without further order of this Court or notice to the Reorganized Debtor, pursue all its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default.  In the event of a second (2nd) default, HC may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**Class 3 Claimant – Texas Comptroller of Public Accounts** – Allowed Secured Priority Claims are for actual and estimated tax returns. The following class contains Debtor actual and estimated tax priority claim for pre-petition estimated amounts and the proposed treatment under the Plan:

**3-1 Sales and Use Tax (POC 9-1; Kin Dee; Case No. 25-3199)** in the total amount of $19,350.53 to be paid at 7.75% per annum beginning with the first month from the petition date until paid in full.  The monthly payment will be $427.89.

**3-2 Mixed Beverage Sales Tax (POC 10-1; Kin Dee; Case No. 25-3199)** in the total amount of $2,531.55 to be paid at 7.75% per annum beginning with the first month from the petition date until paid in full.  The monthly payment will be $55.98.

**3-3 Mixed Beverage Gross Receipts (POC 11-1; Kin Dee; Case No. 25-3199)** in the total amount of $2,055.92 to be paid at 7.75% per annum beginning with the first month from the petition date until paid in full.  The monthly payment will be $45.46.

**3-5 Mixed Beverage Sales Tax (POC 6-1; MaKiin; Case No. 25-32201)** in the total amount of $11,476.12 to be paid at 7.75% per annum beginning with the first month from the petition date until paid in full.  The monthly payment will be $253.76.

**3-6 Mixed Beverage Gross Receipts (POC 7-1; MaKiin Case; No. 25-32201)** in the total amount of $3,943.69 to be paid at 7.75% per annum beginning with the first month from the petition date until paid in full.  The monthly payment will be $87.20.

**3-4 Sales and Use Tax (POC 8-1; MaKiin; Case No. 25-32201)** in the total amount of $35,515.18 to be paid at 7.75% per annum beginning with the first month from the petition date until paid in full.  The monthly payment will be $785.33.

**Texas Comptroller Provisions:**

Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Comptroller of Public Accounts (the "Comptroller"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Comptroller to pursue any non-debtor third parties for tax debts or claims, and the Comptroller specifically opts out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Comptroller, the interest rate shall be the statutory interest rate; and (5) nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Comptroller may amend their claims at any point.

The Comptroller shall not be required to file any proof of claim, motion, or request for payment to be paid for any administrative claims. The Comptroller shall not be required to file any proof of claim, motion, or request for payment to be paid for any obligations that arise or have arisen in the ordinary course of the Debtor' business, including all post-petition taxes incurred by the Debtor after the Petition Date. All post-petition taxes owed to the Comptroller shall be paid in full with applicable interest on or before the Effective Date, or as otherwise agreed by the Comptroller. If any post-petition taxes or Administrative Claims owed to the Comptroller are not due on the Effective Date, then such post-petition taxes or Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

All secured or priority tax claims owed to the Texas Comptroller shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty months after the Petition Date, with the first payment due on the Effective Date; or (3) as otherwise agreed to by the Comptroller. The Comptroller's priority or secured tax claims shall accrue interest at the statutory rate of interest until paid in full.

 A failure by the reorganized Debtor to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Debtor: 1514 Laird St, Unit B, Houston, TX 77008, and upon Debtor's attorney at:  The Lane Law Firm, PLLC, 6200 Savoy Dr, Suite 1150, Houston, TX 77036, Attn:  Robert Chamless Lane, Esq.; notifications@lanelaw.com.  The reorganized Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt. The Texas Comptroller preserves all available

bankruptcy and state law remedies, if any, in the event of default of payment on claims as laid out herein above.

Debtor shall file all delinquent returns due and owing to the Comptroller on or before Effective date and stay current on filings thereafter. Notwithstanding anything to the contrary in the Plan or this Order, the reorganized Debtor will retain documents for the four-year inspection period set forth in Texas Tax Code § 111.0041(a) (or for any pending audits, the later of four years or the time any and all claim(s) based on such audit are resolved).

**Class 4 Claimant** – **Blanket Lien Secured Claims (These claims are impaired)** Allowed Secured Claim is secured by property of the Debtor' bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor' secured pre-petition claim and the proposed treatment under the Plan:

**4-1 Newtek Bank, National Association (6-1; Kin Dee; Case 25-32199)** has an alleged secured claim for $680,641.58.  Newtek is secured by the assets of Kin Dee LLC. Newtek is in lien position 1 for the assets of Kin Dee LLC due the UCC filing on March 21, 2024.  By agreement with Newtek Bank, National Association, the Debtor consents to the value of the secured claim in the amount of $88,000.00.  Debtor will pay the value of claim over 60 equal monthly payments at 7.75% per annum. The monthly payment shall be $1,773.81. The first monthly payment will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining under-secured portion of this claim in the amount of $592,641.58 will be treated in Class 6 of this Plan and paid by Kin Dee from its projected operations.

**4-3 LG Funding, LLC (15-1; Kin Dee Case; 25-32199)** has an alleged secured claim for $92,593.75.  LG Funding LLC claims to be secured by the assets of Kin Dee LLC. LG Funding is in lien position 2 for these assets due the UCC filing on February 27, 2025. Accordingly, LG Funding is entirely under-secured, and this claim will be treated in Class 6 of this Plan and paid by Kin Dee from its projected operations.

**Class 5 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years according to the projections in Exhibit A. Creditors shall receive monthly disbursements based on the projection distributions of each 12-month period (See Exhibit "B"). Debtor will distribute $49,027.43 from Kin Dee to their general allowed unsecured creditor pool over the 5-year (5) year term of the plan, including the under-secured claim portions.  Kin Dee's General Allowed Unsecured Claimants will receive 5.47% of their allowed claims under this plan.  Any potential rejection damage claims from executory contracts that are rejected in this Plan will be added to the Class 5 unsecured creditor pool and will be paid on a pro-rata basis. See the below tables for breakdown of distributions of the General Allowed Unsecured Claims:

| Kin Dee Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 5.47% of Total Claim |
|---|---|---|
| Headway Capital (POC 14-1; 25-32199) | $82,374.69 | $4,507.84 |
| JPMorgan Chase Bank (POC 7-1; 25-32199) | $45,190.02 | $2,472.96 |
| JPMorgan Chase Bank (POC 5-1; 25-32199) | $79,835.87 | $4,368.90 |
| LG Funding LLC (POC 15-1; 25-32199) | $92,593.75 | $5,067.06 |
| Newtek Bank NA (POC 6-1; 25-32199) | $592,641.58 | $32,431.46 |
| US Foods Inc (POC 13-1; 25-32199) | $3,274.85 | $179.21 |
| **Kin Dee Totals** | **$895,910.76** | $49,027.43 |

**Class 6 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtor.  Class 6 Claimant is not impaired under the Plan.

16

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was July 2, 2025. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtor shall have standing to object to Claims.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

# ARTICLE VIII
# EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.      Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a noticethat informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence ofthe Effective Date; and (c) such other matters that Debtor deems appropriate.

B.      Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C.      Vesting of Assets.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan. If the Debtor or Reorganized Debtor defaults in performing under the provisions of the Plan and the Case is converted to Chapter 7, all property vested in the Debtor, and all subsequently acquired property owned as of or after the conversion date, shall revest and constitute property of the bankruptcy estate of in the Chapter 7 case.

D.      Discharge.

1.      Consensual Plan

A consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtor will not be discharged from any debt imposed by this Plan.

18

2. Non-consensual Plan

A non-consensual plan is one in which the Debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor are unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor' Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

E. Injunction Against Interference with Plan.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest from Debtor except as otherwise provided in the Plan.

**ARTICLE IX**
**MECHANICS/IMPLEMENTATION OF**
**PLAN**

Debtor anticipates the continued operations of the business to fund the Projected Disposable Income set forth in the Plan. In addition, as set forth above in Article V, in the event that there is monetary relief recovered by the Debtor from the aforementioned lawsuit, the Debtor shall file a notice to all creditors on the docket of this case informing of the amount recovered by the Debtor, and shall make that amount payable first to any unpaid priority creditor claims, then to the unpaid secured creditor, Newtek Bank National Association, and to the extent there is anything remaining, it shall be disbursed to the unsecured creditor pool. The Projected Disposable Income in the Plan and any monetary recovery by the Debtor in that lawsuit shall be the sole means of funding the Plan.

**ARTICLE X**
**FEASIBILITY OF PLAN**

The projections of the future business operations are attached hereto as Exhibit "B". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

19

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor' Plan is not confirmed, the Debtor' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $50,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately **$895,910.76**. The Debtor' assets include funds in the bank, office equipment, inventory, and accounts receivable. Kin Dee unsecured creditors are receiving their pro-rata share of $49,027.43 approximately 5.47% of their claims under the terms of the Plan.

A liquidation analysis for both restaurants is attached hereto as Exhibit "A".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

Debtor is assuming the executory contract listed on Schedule G.

## ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

20

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor.  Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XV
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XVI
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that there will be excess funds to pay Creditor Claims.

Except as otherwise provided in the Plan, or for obligations or liabilities required to be paid pursuant to this Plan or the Confirmation Order, Confirmation of the Plan shall result in the issuance of a permanent injunction prohibiting all Entities who have held, hold, or may hold Claims that have been discharges from commencing or continuing any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor that arose prior to the Confirmation Date.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

After the filing of this Chapter 11, the Debtor and Debtor Representative in her individual capacity filed a lawsuit in Harris County District Court styled as *Kin Dee, LLC and Warattayar Srasrisuwan v. Krua LLC et al*, Cause No. 2025-67603, In the 234th District Court of Houston, Harris County Texas.  This action seeks to enjoin Ms. Srasriswan's former partner from competing against her and the Debtor.  At this time, it is not anticipated that there will be a financial recovery from the Defendants, rather it is anticipated that any relief would most likely come in the form of permanent injunctive relief and enforcement of a non-compete.  That said, in the event that there is monetary relief recovered by the Debtor from that lawsuit, the Debtor shall file a notice to all creditors on the docket of this case informing of the amount recovered by the Debtor, and shall make that amount payable first to any unpaid priority creditor claims, then to the unpaid secured creditor, Newtek Bank National Association, and to the extent there is anything remaining, it shall be disbursed to the unsecured creditor pool.

The  Debtor has evaluated all other potential claims which may be brought. The Debtor is  unaware  of  any litigation  which could  be brought  for  the  benefit  of  the creditors of the estate other than the litigation described above.

Dated: February 6, 2026

Respectfully submitted,

Kin Dee, LLC

By: */s/Warattayar Srasrisuwan*
Warattayar Srasrisuwan, Owner

22

Ex. A - Projected Liquidation Analysis - 25-32199 - Kin Dee

| Asset | Gross Value on Petition Date | Current Gross Value | Asset Debts | Net Value | Lienholder |
|---|---|---|---|---|---|
| | | | | | |
| Cash | $7,698.29 | $19,454.00 | $0.00 | $19,454.00 | |
| Deposits | $12,270.83 | $12,270.83 | $0.00 | $12,270.83 | |
| | | | | | |
| **Inventory** | | | | | |
| Kin Dee | $5,000.00 | $6,250.00 | $0.00 | $6,250.00 | |
| | | | | | |
| **Equipment/Furniture** | | | | | |
| Restaurant Furniture, Kitchen Equipment, Phones, Printer and Computer Equipment | $5,000.00 | $5,000.00 | | $5,000.00 | |
| | | | | | |
| **Intellectual Property** | $2.00 | $2.00 | | $2.00 | |
| | | | | | |
| **TOTAL** | **$29,971.12** | **$42,976.83** | | **$42,976.83** | |

| | | Claim Amount | Liquidation Payable Amt | Remaining Value | |
|---|---|---|---|---|---|
| **Liquidation Value** | | | $42,976.83 | **$42,976.83** | |
| | | | | | |
| **Priority Claims:** | | | | | |
| Texas Comptroller 9-1 | | $19,350.53 | $19,350.53 | **$23,626.30** | |
| Texas Comptroller 10-1 | | $2,531.55 | $2,531.55 | **$21,094.75** | |
| Texas Comptroller 11-1 | | $2,055.92 | $2,055.92 | **$19,038.83** | |
| | | | | | |
| **Secured Claim(s):** | | | | | |
| Newtek Bank NA | | $680,641.58 | $19,038.83 | $0.00 | |
| | | | | | |
| **Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditors)** | | | $0.00 | $0.00 | |

| Ordinary Income/Expense | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Total Revenue | $2,100,000.00 | $2,152,500.00 | $2,184,787.50 | $2,267,809.43 | $2,344,914.95 |
| | | | | | |
| **Expenses** | | | | | |
| Employee Payroll + Tips + Tax | $756,000.00 | $774,900.00 | $786,523.50 | $816,411.39 | $844,169.38 |
| Health Insurance | $30,000.00 | $30,900.00 | $31,827.00 | $32,781.81 | $33,765.26 |
| Workers Comp | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Rental Lease Space | $174,200.00 | $179,426.00 | $184,808.78 | $190,353.04 | $196,063.63 |
| Utilities | $36,000.00 | $37,800.00 | $39,690.00 | $41,674.50 | $43,758.23 |
| Inventory Purchases (Cost of Good Sold + Materials) | $525,000.00 | $538,125.00 | $546,196.88 | $566,952.36 | $586,228.74 |
| Repair and Maintenance | $30,000.00 | $40,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Live Music Entertainment | $60,000.00 | $63,000.00 | $66,150.00 | $69,457.50 | $72,930.38 |
| Food Delivery Expenses | $120,000.00 | $123,000.00 | $124,845.00 | $129,589.11 | $133,995.14 |
| Postage & Shipping | $5,000.00 | $5,250.00 | $5,512.50 | $5,788.13 | $6,077.53 |
| Work Travel and Meals Seminar | $2,000.00 | $2,000.00 | $2,500.00 | $3,000.00 | $3,500.00 |
| Insurance | $42,000.00 | $42,840.00 | $42,000.00 | $42,000.00 | $42,000.00 |
| Dues & Subscriptions | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 |
| Credit Card Merchant Fees | $63,000.00 | $64,575.00 | $65,543.63 | $68,034.28 | $70,347.45 |
| Equipment Leases | $10,800.00 | $11,016.00 | $11,236.32 | $11,461.05 | $11,690.27 |
| Office Supplies | $8,000.00 | $8,240.00 | $8,487.20 | $8,741.82 | $9,004.07 |
| Advertising | $95,000.00 | $99,750.00 | $104,737.50 | $109,974.38 | $115,473.09 |
| Bank Service Charges | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Travel Meals & Entertainment | $6,000.00 | $6,180.00 | $6,365.40 | $6,556.36 | $6,753.05 |
| County Property Taxes | $2,400.00 | $2,640.00 | $2,904.00 | $3,194.40 | $3,513.84 |
| Sales Tax (Mixed Beverage Gross Receipt) | $28,350.00 | $29,058.75 | $29,494.63 | $30,615.43 | $31,656.35 |
| Accounting Fees | $12,200.00 | $12,500.00 | $13,500.00 | $15,000.00 | $15,000.00 |
| Legal Fees | $30,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| Misc Business ExpensesVariance Allowance | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| | | | | | |
| **Total Expense** | ($2,066,450.00) | ($2,116,700.75) | ($2,147,822.33) | ($2,227,085.55) | ($2,301,426.41) |
| **Projected Disposable Income** | **$33,550.00** | **$35,799.25** | **$36,965.17** | **$40,723.88** | **$43,488.53** |

| PLAN PAYMENTS | | | | | |
|---|---|---|---|---|---|
| **Claims** | **Months 1-12** | **Months 13-24** | **Months 25-36** | **Months 37-48** | **Months 49-60** |
| | | | | | |
| City of Houston | $172.23 | $172.23 | $172.23 | $172.23 | $172.23 |
| HISD | $288.04 | $288.04 | $288.04 | $288.04 | $288.04 |
| Houston Community College System | $45.99 | $45.99 | $45.99 | $45.99 | $45.99 |
| Harris County | $189.92 | $189.92 | $189.92 | $189.92 | $189.92 |
| Texas Comptroller 9-1 | $5,107.18 | $5,107.18 | $5,107.18 | $5,107.18 | $5,107.18 |
| Texas Comptroller 10-1 | $668.15 | $668.15 | $668.15 | $668.15 | $668.15 |
| Texas Comptroller 11-1 | $542.62 | $542.62 | $542.62 | $542.62 | $542.62 |
| Newtek Bank 6-1 | $21,285.75 | $21,285.75 | $21,285.75 | $21,285.75 | $21,285.75 |
| | | | | | |
| **Allowed General Unsecured Claims** | | | | | |
| Undersecured and Unsecured 5.47% | $5,250.12 | $7,499.37 | $8,665.29 | $12,424.00 | $15,188.65 |
| | | | | | |
| **Annual Plan Payment** | $33,550.00 | $35,799.25 | $36,965.17 | $40,723.88 | $43,488.53 |
| | | | | | |
| Monthly Payment | $2,795.83 | $2,983.27 | $3,080.43 | $3,393.66 | $3,624.04 |